# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **GEORGE CONN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 14-CV-218-PJC** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the** ) | |
| **Social Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

Claimant, George Conn ("Conn"), pursuant to 42 U.S.C. § 405(g), requests judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. In accordance with 28 U.S.C. § 636(c)(1) and (3), the parties have consented to proceed before a United States Magistrate Judge. Any appeal of this order will be taken directly to the Tenth Circuit Court of Appeals. Conn appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Conn was not disabled. For the reasons discussed below, the Court **AFFIRMS** the Commissioner's decision.

## Claimant's Background

At the time of the hearing before the ALJ on November 15, 2012, Conn was 45 years old. (R. 76, 199). Conn testified that in 2008, following an automobile accident, he had been placed on pain medications and was unable to work. (R. 83-84). He testified that he was last employed

in 2010 as a warehouse worker, but quit after about a month due to difficulty standing on cement floors. (R. 84). At the time of the hearing, he said that his symptoms were getting worse. (R. 98).

Conn testified to problems with neck pain, including difficulty turning his head. (R. 85-86). Neck pain radiated into his left shoulder, arms, and back. (R. 86). Sitting and standing up made him feel as though he was hit in the back with a baseball bat. *Id.* Conn's doctor had told him that he had a "flat nerve" in his back that would never get better. (R. 99).

Conn testified that he had been diagnosed with diabetes with neuropathy. (R. 88-90). His blood sugar levels were between 180 and 280. (R. 91). He said that diabetes made him constantly thirsty and increased his need to urinate. (R. 88, 96). He experienced swelling and numbness in his legs, left knee, ankles, feet, and toes, as well as ulcers and calluses on his feet. (R. 88-91). Swelling in his feet caused his toe nails to turn black and fall off. (R. 88). Conn said that his feet felt like "blocks of ice" and that he could not feel them when he took his shoes off. (R. 87, 89).

Conn testified that he experienced swelling and numbness in his shoulders, arms, wrists, and fingers. (R. 89-91). Conn reported difficulty gripping, grasping, handling, and fingering. (R. 91). Conn said that he had problems picking up small items things like paper clips, because he was unable to feel them, and he dropped items. (R. 91-92).

Conn testified that he could "barely" sleep, and that when he could, it was for about 30 minutes to one hour at night. (R. 94). He was unable to sleep at all during the day. *Id.* Conn stated that he had been sleep deprived "for a long time." *Id.* He said that his energy was low. *Id.* Conn said that he would sometimes go for three to four days without eating. (R. 94-95). Conn's

doctor believed that he was depressed and prescribed Prozac, but Conn could not tell if it helped. (R. 94).

Conn testified to problems standing and walking. (R. 91-92, 97-98). Conn experienced dizziness that he thought was a side effect to his medication. (R. 91). He felt dizzy after about 15 minutes of standing. (R. 97). He had fallen backwards in the past. (R. 91-92). He had used a walker for several years for "support." (R. 92, 98). At the time of the hearing, Conn said that his blood pressure was "borderline," but was "pretty much under control." (R. 92-93). Conn testified that he was exercising, walking, and eating as his doctor instructed. (R. 99-100).

Regarding Conn's physical limitations, he said that he was able to walk about 10 to 15 feet before having to rest for about 15 minutes. (R. 100). He could walk for about 15 feet without using his walker. (R. 97). Conn could sit for about 15 to 30 minutes at one time. *Id.* He said that he could lift about 10 pounds straight up, but could not carry it. (R. 98). He said that he could pick up 10 pounds and hold it in front of him, but would "pay for it" within an hour. *Id.*

When asked to describe his typical day, he said that he spent it "miserably" sitting on the couch. (R. 93). He stayed in a reclining position to "relax" his feet. *Id.* In a seated position, he would continually shift positions. *Id.* When seated for one hour, he estimated that he would move about 20 times. *Id.* He occasionally watched television. (R. 95). Conn reported difficulty cooking due to problems standing and bending. *Id.* He did a "little bit" of cooking, such as biscuits in the toaster oven. (R. 93-94). Conn did not do household chores. (R. 93). Conn said that he drove "locally." (R. 96).

3

On June 13, 2007, Conn was seen at Family & Senior Health Center ("FSHC").[1]  (R. 363-64).  It appears that Conn complained of swelling in his left arm and leg.  (R. 363).  The appointment note appears to state that Conn had diabetes that was controlled.  *Id.*  Diagnoses were hypertension and eczema.  (R. 364).

On December 17, 2007, Conn was examined at FSHC for neck pain, left shoulder pain, and low back pain following a motor vehicle accident.  (R. 359-60).  He complained of occasional pain, tingling, and numbness in his left leg.  (R. 359).  Assessments were paracervical and lumbar muscle strain and pain and left leg numbness.  (R. 360).

Conn returned to FSHC on December 27, 2007, with continued complaints of left shoulder pain and left leg pain, along with numbness in his hands.  (R. 357-58).  He reported headaches.  (R. 357).  Conn stated that he was unable to work at that time due to the narcotic medications that he was taking.  *Id.*  Assessments were status post-motor vehicle accident, cervical strain, low back pain, paresthesias, and vertigo.  (R. 358).  Left foot and cervical spine x-rays were taken and were normal.  (R. 378-79).  Referrals were made to an orthopedist and physical therapist.  *Id.*

Steven R. Hardage, M.D., with Eastern Oklahoma Orthopedic Center, examined Conn on January 3, 2008.  (R. 328-29).  Conn complained of constant pain in his neck, left shoulder, and lower back.  (R. 328).  He reported occasional episodes of shooting pain down both of his arms that lasted 10 to 15 minutes at a time.  *Id.*  Conn experienced numbness and a tingling sensation in his left arm and his legs.  *Id.*  Moving, twisting, and flexion exacerbated his back pain.  *Id.*  He reported difficulty sleeping and occasional dizziness.  *Id.*  Dr. Hardage said that cervical spine x-

---

[1] Records from FSHC take the form of hand-written notes on pre-printed forms.  The handwriting on these records is often difficult to read.  (R. 339-40, 345-64).

rays showed no abnormality.  (R. 329).  X-rays of the lumbar spine showed loss of lumbar lordosis and mild degenerative changes at L4-5 and L5-S1 levels with facet arthropathy.  *Id.*  Dr. Hardage's impressions were cervical strain, lumbar strain, lumbar spondylosis, and left arm paresthesias.  *Id.*  Conn was prescribed medications and instructed on stretching and range of motion exercises.  *Id.*

Also on January 3, 2008, Matthew Johnston, M.D., completed a physical therapy evaluation.  (R. 380-83).  Conn complained of neck pain, low back pain, and body pain.  (R. 380).  He had difficulty turning his head left to right.  *Id.*  Conn experienced numbness and a tingling sensation in both of his arms and decreased grip strength.  *Id.*  Conn reported difficulty with flexion and abduction arm movement.  (R. 381).  He reported difficulty moving his legs due to stiffness and swelling.  *Id.*  Dr. Johnston noted that Conn's movements were guarded when he knew he was being observed.  (R. 382).  Dr. Johnston additionally noted that he had observed Conn lifting his girlfriend and her wheelchair without display of pain or difficulty moving his neck.  *Id.*  Dr. Johnston noted that Conn was obese and had abnormal posture.  *Id.*  Dr. Johnston's diagnoses were status post-motor vehicle accident, low back pain, cervical spine pain, muscle weakness, and pain.  (R. 380).  Dr. Johnston recommend physical therapy and a home exercise program.  *Id.*

On January 9, 2008, Conn underwent a cervical spine MRI that showed mild acquired spinal stenosis with posterior osteophyte and small central disc protrusion at C4-C5; degenerative joint disease and a mild bulge at C3-C4 and C5-C6 levels; and a tiny central protrusion at C2-C3.  (R. 331-32, 375-76).

Conn was seen at FSHC on January 14, 2008.  (R. 355-56).  Assessments were motor vehicle accident, bulging cervical disc, and cervical strain.  *Id.*  Flexeril and Lortab were

prescribed.  *Id.*  Also on January 14, 2008, Conn saw Dr. Hardage and he continued to complain

of neck and back pain, as well as numbness and tingling in his left arm.  (R. 327).  Dr. Hardage's

impressions were degenerative disc disease, disc protrusion, lumbar strain, and lumbar

spondylosis.  *Id.*  Dr. Hardage prescribed prednisone.  *Id.*  On January 28, 2008, Conn reported

that he was "somewhat better" since starting prednisone.  (R. 326).  Dr. Hardage prescribed

meloxicam and Skelaxin.  *Id.*

On February 8, 2008, Conn was seen at FSHC for an injury to his left knee.  (R. 353-54).

He reported that his injury occurred when he became lightheaded and fell down some stairs.  (R.

353).  Assessments included status post-fall and lumbar strain.  *Id.*  Conn said that Flexeril was

helping him "some."  (R. 353).  Medications were continued and Lortab was added.  (R. 354).

On February 15, 2008, Conn had a cervical steroid injection performed by Christopher D.

Emerson, M.D.  (R. 314-17, 335).

At Conn's appointment with Dr. Hardage on February 26, 2008, he had ongoing neck and

back pain, but no shoulder pain.  (R. 325).  He complained of pain in his legs that was worse in

his left leg than right.  *Id.*  On March 21, 2008, Conn stated that the steroid injection had "helped

significantly."  (R. 324).  Dr. Hardage noted that Conn had "very little neck pain," but continued

to experience back and left leg pain.  *Id.*  Changes in the weather increased Conn's pain.  *Id.*  On

examination, Conn had mild pain with neck flexion.  *Id.*  He had tenderness to palpation in the

neck and back.  *Id.*  Dr. Hardage stated that a March 18, 2008 MRI of Conn's lumbar spine

showed multi-level disc bulges; degenerative facet changes at L4-L5 and L5-S1; and mild left

neural foraminal narrowing at the lower lumbar levels.  *Id.*  Dr. Hardage's impressions were

cervical degenerative disc disease with C4-C5 disc protrusion; lumbar strain; lumbar

degenerative disc disease; and L5-S1 disc bulge with left neural foraminal narrowing.  *Id.*  Conn

was instructed to continue with anti-inflammatory medication, muscle relaxants, rehabilitation therapy, and strengthening exercises. *Id.* Dr. Hardage recommended a lumbar steroid injection, which he performed on April 17, 2008. (R. 333-34).

When seen by Dr. Hardage on April 25, 2008, Conn was doing "much better." (R. 336). Conn reported occasional episodes of mild neck pain. *Id.* He said that he had pain in his left buttocks and a tingling sensation in his left thigh. *Id.* On examination, Conn had mild pain with back extension. *Id.* Dr. Hardage's impressions were cervical degenerative disc disease with C4-C5 disc protrusion; and lumbar degenerative disc disease with L5-S1 disc protrusion and left neural foraminal narrowing. *Id.* Dr. Hardage recommended that Conn continue physical therapy and strengthening exercises, but limit any "aggravating activities." *Id.* Anti-inflammatory medications were to be taken as needed. *Id.*

On April 30, 2008, Conn was seen at FSHC for low back pain. (R. 351-52). Lotrisone, Mobic, and Flexeril were prescribed. *Id.*

Conn was seen at FSHC on July 29, 2009 for swelling in his arms and ankles. (R. 349). Conn said that he had constant pain in his feet, and he complained of frequent headaches. (R. 349). Conn reported that he was not working. *Id.* Assessments were diabetes, chronic back pain, diabetic peripheral neuropathy, and hyperlipedemia. *Id.* Conn's medications were adjusted. *Id.*

Conn was seen at FSHC on September 23, 2009 for injuries sustained in a physical assault. (R. 347-48). He reported problems with body aches and dizziness. (R. 347). Physical examination revealed symptoms of Bell's palsy on his left side. (R. 347). Assessments included symptoms post-assault and rib pain. (R. 348).

On December 1, 2009, Conn was seen at FSHC for headaches, body aches, and difficulty sleeping. (R. 345-46). Assessments were myalgia, insomnia, and diabetes, and Conn's medications were adjusted. (R. 346).

On May 23, 2011, Conn was seen at FSHC for complaints of right shoulder pain and back pain. (339-40). Conn's diabetes was uncontrolled when tested. (R. 344). It was noted that Conn needed a new glucometer and that he had been out of his medications for "several months." (R. 339). Assessments were diabetes, shoulder pain, and hypertension. (R. 340). He was prescribed Metamorfin, Lisinopril, Lortab, meloxicam, and Flexeril. *Id.*

Conn was seen at the emergency room at Mayes County Medical Center ("Mayes Medical") on March 18, 2012 for low back pain and pain at the top of his mouth. (R. 417-24). His back pain was exacerbated by movement. (R. 421). Lab work showed his glucose level was 464 and was noted as "critical." (R. 418, 423). X-rays were taken and revealed mild degenerative spine changes with small osteophytes. (R. 424). Diagnoses appear to be low back pain, poorly controlled diabetes, and acute necrotizing ulcerative gingivitis. (R. 418).

On March 21, 2012, Conn was examined by Jeffrey Williams, D.O., at FSHC. (R. 433-34). He complained of low back pain, right shoulder pain, headaches, and dizziness. (R. 433). Conn was not checking his blood sugar levels regularly. *Id.* Assessments were low back pain and uncontrolled diabetes. (R. 434). He was counseled about diabetes education. *Id.* Prescriptions were written for Lortab, Flexeril, Metformin, Glipizide, and Lisinopril. *Id.* Dr. Williams encouraged Conn to establish care at OSU Medical Center. *Id.*

On April 1, 2012, Conn was seen at Mayes Medical for complaints of back pain and a "knot" on the back of his neck. (R. 425-31). Assessments were lumbar sprain and strain and a

lymph node infection. (R. 431). He was prescribed medications and advised to do back exercises. *Id.*

When Conn was seen by Dr. Williams at FSHC on April 4, 2012, the "knot" on his neck was "very painful and swollen." (R. 435). He was diagnosed with a neck abscess and started on Bactrim. (R. 436). At his follow-up appointment on April 24, 2012, the abscess on his neck was worse. (R. 439-40). Assessments were neck abscess and diabetes. (R. 440)

On May 24, 2012, Conn was seen at OSU Medical Center (the "OSU Clinic") for complaints of shortness of breath, chest pain, and dizziness. (R. 445-46). Conn was not regularly checking his blood sugar. (R. 445). He complained of occasional episodes of chest pain and dizziness. *Id.* On examination, edema of both legs was noted, as well as an abscess on his neck. *Id.* The doctor suspected that Conn had a possible hernia. *Id.* Assessments were uncontrolled diabetes, uncontrolled hypertension, obesity, and chronic neck abscess. (R. 446). An echocardiograph was ordered and performed on June 7, 2012. (R. 447). The test results showed "[n]ormal left ventricular function with no wall motion abnormalities," and ejection fraction was noted as 60%. *Id.*

Conn was seen at the OSU Clinic on June 21, 2012 for chronic back pain and chronic neck abscess. (R. 448). He reported that his blood sugar levels generally ran between 170 and 200. *Id.* He experienced chest pain, shortness of breath, excessive sweating, and occasional episodes of fainting. *Id.* He reported difficulty sleeping; decreased appetite; poor concentration; low energy; feelings of hopelessness; and feelings of guilt. (R. 448). Conn had Bell's palsy on his left side. *Id.* Impressions were chest pain; chronic back pain; uncontrolled diabetes, improving; and hypertension. (R. 449). He was referred for diabetes education and an opthalmology appointment. *Id.*

When seen for a follow-up at the OSU Clinic on July 23, 2012, Conn was feeling better and was walking more. (R. 451). On examination, Conn was obese and had an umbilical hernia. *Id.* Impressions appear to include uncontrolled diabetes, improving; hypertension; obesity; chronic low back pain; and diabetic neuropathy. (R. 452). Medications were adjusted. *Id.*

Conn's glucose level was 295 when tested on August 2, 2012. (R. 470).

On August 9, 2012, Conn was seen at Free Medical Clinic ("FMC") and examined for a "large" broken blister on his right foot. (R. 471). Neuropathy was assessed together with a note of the blister and Conn's diabetes. *Id.* Conn was counseled about maintaining proper foot care and diet. *Id.*

On August 20, 2012, Conn was seen by Kelley Joy, D.O., at the Oklahoma State University osteopathic manipulative medicine clinic (the "OMM Clinic") for an outpatient initial consultation. (R. 455-56). Conn complained of chronic back pain, and he said that his pain was aggravated by everyday activity and alleviated by rest. (R. 455-56). Conn experienced numbness and tingling in his hands and feet. *Id.* Conn complained of chest pain and shortness of breath. (R. 456). He reported a burning sensation on the plantar side of his feet. (455). He had blisters on the bottoms of his feet, but he denied not monitoring them. (R. 455-56). On examination, he had a non-pitting left leg edema and vascular insufficiency. (R. 455). The form noted MRI results reflecting spinal stenosis and herniation at C4-C5; degenerative disc disease and bulge at C3-C4 and C5-C6; and protrusion at C2-C3. *Id.* The appointment note referenced symptoms of depression. *Id.* Impressions were somatic dysfunction, back pain, and uncontrolled diabetes. *Id.* Conn was treated with osteopathic manipulation of his back, and he was instructed to do stretching exercises at home. *Id.*

When Conn's feet were examined at FMC on August 23, 2012, the blisters on his feet were no longer infected, but they were dirty. (R. 472). At his follow-up appointment September 6, 2012, the blisters were healed. *Id.* The assessment was "very uncontrolled" diabetes. *Id.* The doctor wrote that Conn was "unable to work." *Id.*

Conn was seen by Dr. Joy on September 26, 2012, and reported that his previous treatment at the OMM Clinic had alleviated his symptoms for only a few days after treatment. (R. 454). He was taking Tramadol, which was helping his pain. (R. 454). Conn was seen again at the OMM Clinic on October 22, 2012 for ongoing back pain. (R. 453). He returned on November 28, 2012, for complaints of ongoing back pain, as well as insomnia. (R. 464-68). Conn described his back pain as achy, dull, and stabbing. (R. 464-68). He rated it as a nine on a scale of one-to-ten. *Id.*

On December 6, 2012, Conn was seen at FMC for chronic back pain, and assessments were uncontrolled diabetes and back pain. (R. 474). Medications were continued and Celebrex was added. *Id.*

Conn saw Dr. Joy at the OMM Clinic on December 17, 2012 for ongoing back pain, chronic headaches, and sinus problems. (R. 459-63). Conn said that lying on his back aggravated his back pain. (R. 459). Assessments included low back pain and somatic dysfunction of the thoracic spine. (R. 462).

Conn presented to FMC on February 21, 2013, complaining of loss of appetite, fever, dizziness, and an abscess on his left leg. (R. 475). On examination, Conn's blood pressure was 134/76, and his heart rate was 122. *Id.* The doctor noted that Conn was obese. *Id.* Assessments were abscess and cellulitis on his left thigh, tachycardia that was most likely due to an infection,

and a fever. *Id.* Conn was started on Bactrim and instructed to go the emergency room if he had worsening symptoms. *Id.*

Conn's glucose level was 265 when tested at Mayes Medical on March 1, 2013. (R. 33).

On March 14, 2013, Conn was seen at FMC for complaints of a rash on his abdomen, arms, and legs. (R. 34). Celebrex was discontinued because the doctor questioned if the rash was a possible allergic reaction. *Id.* At Conn's appointment on April 18, 2013, the rash had cleared when he stopped Celebrex. (R. 35). Conn reported that his pain level was a "10." *Id.* Assessments included low back pain and insomnia. *Id.*

On June 13, 2013, Conn was seen at FMC for blisters on the bottom of his feet. (R. 36). Assessments were diabetes, infected right foot ulcer, left foot ulcer, and bilateral foot neuropathy. *Id.* Conn was instructed on the care of his feet and encouraged to eat a healthy diet. *Id.* Conn was examined by Paul Mobley, D.O., at FMC on July 11, 2013. (R. 19-32). Dr. Mobley's assessments were uncontrolled diabetes and "severe limb-threatening" bilateral foot ulcers. (R. 19). Dr. Mobley instructed Conn to be seen at an emergency room as soon as possible. *Id.*

On July 17, 2013, Conn was admitted to Hillcrest Hospital with diagnoses of diabetic foot ulcer, hypertension, chest pain, and hyperlipidemia. (R. 15-32). On July 19, 2013, Conn underwent surgical bilateral diabetic foot wound debridement, and amputation of the fourth and fifth toes on his left foot. (R. 16-17).

Agency consultant David Wiegman, M.D., completed a physical examination of Conn on August 20, 2011. (R. 386-92). Dr. Wiegman noted Conn as 5'11" and weighing 259 pounds. (R. 387). On examination, Conn had decreased leg strength. *Id.* Dr. Wiegman wrote that Conn had "significantly" decreased range of motion of his back, with only 30 degrees of flexion, 10 degrees of extension, and 15 degrees flexion from left to right. *Id.* Conn reported pain with back

movement and tenderness to palpation over his lumbar spine. *Id.* Dr. Wiegman noted that Conn

had normal range of neck motion, but displayed some pain with movement. *Id.* Dr. Wiegman

observed that Conn had a slow, symmetric gait, and that he appeared to be in significant pain

walking. *Id.* Conn had to stop to rest after walking about 20 feet. *Id.* He was unable to walk on

his toes and heels separately and unable to walk heel-to-toe. *Id.* He displayed good coordination

with normal thumb to finger opposition. *Id.*

Dr. Wiegman's impressions were:

1.  Back pain. The claimant has history of injury in 2007 and chronic back
    [pain] ever since then. He had been diagnosed with arthritis and
    degenerative discs and this causes him to have chronic back pain with
    some radiation down his legs. This has significantly affected his walking,
    standing and lifting ability. He had significantly decreased range of
    motion today on exam and significant pain in his back.
2.  Diabetes with neuropathy. The claimant has some foot neuropathy off and
    on.
3.  Hypertension.
4.  Osteoporosis.
5.  Obesity.

(R. 388).

Nonexamining agency consultant Janet G. Rodgers, M.D., completed a Physical Residual

Functional Capacity Assessment on September 20, 2011. (R. 407-13). Dr. Rodgers found Conn

limited to sedentary work. (R. 408). In the section for narrative comments, Dr. Rodgers noted

Conn's history of treatment for back and shoulder pain, including the results of the MRI reports

dated January 9, 2008 and March 18, 2008. (R. 408-09, 414). Dr. Rodgers summarized Dr.

Wiegman's consultative examination report in some detail. *Id.* For postural limitations, Dr.

Rodgers found that Conn could occasionally climb, balance, stoop, kneel, crouch, and crawl. (R.

409). Dr. Rodgers found no manipulative, visual, communicative, or environmental limitations.

(R. 410-11).

Agency nonexamining consultant, Janice B. Smith, Ph.D., completed a Psychiatric Review Technique Form dated September 9, 2011. (R. 393-406). Dr. Smith wrote that Conn's "issues with concentration appear to be the direct result of his physical allegations, and not a mental health issue, thus development is curtailed." (R. 405).

## Procedural History

Conn filed his applications for disability insurance benefits and supplemental security income with a protective filing date of March 22, 2011. (R. 199-214). Conn stated that he had become unable to work on December 2, 2010. (R. 208). The applications were denied initially and upon reconsideration . (R. 128-36, 138-43). An administrative hearing was held before ALJ Deborah L. Rose on November 15, 2012. (R. 76-104). By decision dated December 21, 2012, the ALJ found that Conn was not disabled. (R. 53-64). On March 19, 2014, the Appeals Council denied review. (R. 1-6). Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Social Security Law and Standard Of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability

claim.  20 C.F.R. § 404.1520.[2]  *See also Wall v. Astrue*, 561 F.3d 1048, 1052-53 (10th Cir. 2009)

(detailing steps).  "If a determination can be made at any of the steps that a claimant is or is not

disabled, evaluation under a subsequent step is not necessary."  *Lax*, 489 F.3d at 1084 (citation

and quotation omitted).

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. §

405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported

by substantial evidence; and, second, whether the correct legal standards were applied.  *Hamlin v.*

*Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to

support a conclusion.  *Wall*, 561 F.3d at 1052 (quotations and citations omitted).  Although the

court will not reweigh the evidence, the court will "meticulously examine the record as a whole,

including anything that may undercut or detract from the ALJ's findings in order to determine if

the substantiality test has been met."  *Id.*

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. § 404.1510.  Step Two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities.  *See* 20 C.F.R. § 404.1520(c).  If the claimant is engaged in substantial gainful activity (Step One) or if the claimant's impairment is not medically severe (Step Two), disability benefits are denied.  At Step Three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App.1 ("Listings").  A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry.  If not, the evaluation proceeds to Step Four, where the claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work.  If the claimant's Step Four burden is met, the burden shifts to the Commissioner to establish at Step Five that work exists in significant numbers in the national economy which the claimant, taking into account his age, education, work experience, and RFC, can perform.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work.  20 C.F.R. § 404.1520.

**Decision of the Administrative Law Judge**

The ALJ found that Conn met insured status requirements through March 31, 2014. (R. 55). At Step One, the ALJ found that Conn had not engaged in any substantial gainful activity since the alleged onset date of April 2, 2008. *Id.* At Step Two, the ALJ found that Conn had severe impairments of "degenerative disc disease and degenerative joint disease of the cervical and lumbar spine, hypertension, diabetes mellitus with neuropathy, obesity, an umbilical hernia and arthritis." *Id.* At Step Three, the ALJ found that Conn's impairments did not meet any Listing. (R. 55-56).

The ALJ found that Conn had the RFC to do sedentary work with ability to occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, but inability to climb ladders, ropes or scaffolds, and a further limitation to simple, routine tasks. (R. 56). At Step Four, the ALJ determined that Conn was unable to perform past relevant work. (R. 63). At Step Five, the ALJ found that there were a significant number of jobs in the national economy that Conn could perform, taking into account his age, education, work experience, and RFC. *Id.* Therefore, the ALJ found that Conn was not disabled at any time from April 2, 2008 through the date of the decision. (R. 64).

**Review**

Conn makes four arguments in this proceeding. First, Conn asserts that the ALJ did not properly analyze the opinion evidence. Plaintiff's Opening Brief, Dkt. #13, pp. 4-8. Second, Conn asserts that the ALJ's RFC determination did not reflect all of his impairments. *Id.*, pp. 5, 8-9. Third, he states that the ALJ's credibility assessment was inadequate. *Id.*, pp. 5, 9-10. Fourth, Conn included one sentence stating that the ALJ had failed to analyze what impact Conn's obesity had on his RFC. *Id.*, p. 10. As described below, Conn did not develop any

sufficient argument related to obesity, and therefore that issue is waived. Regarding the other issues raised by Conn, the Court finds that some aspects of those issues are not sufficiently developed and are therefore waived. Regarding all of the arguments raised by Conn, the ALJ's decision is supported by substantial evidence and complies with legal requirements. Thus, the ALJ's decision is **AFFIRMED**.

## Waiver of Obesity Issue

Before proceeding to a review on the merits of Conn's issues on appeal, the Court addresses the requirement that a Social Security claimant must adequately develop arguments before a district court. *Wall*, 561 F.3d at 1066. In *Wall*, the court discussed an argument related to the claimant's RFC. *Id.* The Tenth Circuit noted that at the district court level, the claimant had merely alleged, several times, that the ALJ had failed to consider the objective medical evidence. *Id.* The appellate court cited to the opinion of the district court judge, stating that "[b]ecause Claimant's counsel failed to present any developed argumentation in regard to Claimant's physical impairments, the district court obviously viewed this issue as waived." *Id.* The Tenth Circuit called the claimant's argument at the district court "perfunctory," and said that it had deprived that court of the opportunity to analyze and rule on that issue. *Id.* (quotation and citation omitted). *See also Krauser v. Astrue*, 638 F.3d 1324, 1326 (10th Cir. 2011) (Tenth Circuit's review is limited to issues the claimant preserved at the district court level and adequately presented on appeal); *Tietjen v. Colvin*, 527 Fed. Appx. 705, 709 (10th Cir. 2013) (unpublished) (affirming lower court's finding of waiver when argument was one "unspecific, undeveloped, and unsupported single sentence"); *Sullivan v. Colvin*, 519 Fed. Appx. 985, 987 (10th Cir. 2013) (unpublished) (affirming lower court's finding of waiver on credibility issue).

Conn's entire argument regarding his obesity is one sentence stating that the ALJ mentioned obesity but failed to analyze what impact it had on the RFC determination. Plaintiff's Opening Brief, Dkt. #13, p. 10. This one sentence is by definition perfunctory, and it deprives this Court of the opportunity to analyze and rule on the issue of obesity. Conn has therefore waived any arguments regarding obesity pursuant to *Wall* and the other Tenth Circuit authorities described above. The other aspects of Conn's arguments that are not sufficiently developed to allow meaningful review will be discussed in the context of Conn's other three articulated issues on appeal.

**Opinion Evidence**

Conn's first argument is that the ALJ did not sufficiently analyze the opinion evidence. Plaintiff's Opening Brief, Dkt. #13, pp. 4-8. Conn starts with the opinion evidence of agency nonexamining consultant Dr. Rodgers, stating that there "are several inconsistencies" within Dr. Rodgers' report that undercut its probative value and accuracy. *Id.*, p. 5. First, Conn complains that his eyesight in his right eye was 20/100, but Dr. Rodgers did not find any visual limitations. *Id.*, pp. 5-6. Conn did not complain of any vision problems in his testimony before the ALJ, including in his testimony that he had driven about 60 miles to the hearing. (R. 76-104). Moreover, when the ALJ asked Conn's attorney for his theory regarding why Conn was disabled, he did not mention vision issues. (R. 81). Conn's attorney did not ask Conn any questions about his vision. (R. 76-104). When a claimant is represented by counsel, the ALJ can ordinarily rely on counsel to structure and present the claimant's case. *Hawkins v. Chater*, 113 F.3d 1162, 1166-67 (10th Cir. 1997). In these circumstances, when the record discloses that Conn never made any assertion that he had a vision problem that contributed to his claim of disability, Dr.

Rodgers' failure to impose any visual limitations is understandable, and there is no error arising from the ALJ's reliance on Dr. Rodgers' report on that point.

Second, Conn argues that Dr. Rodgers' conclusion that Conn was capable of standing and/or walking at least two hours a day was not supported by Dr. Wiegman's consultative examination report. Plaintiff's Opening Brief, Dkt. #13, p. 6. Some of Dr. Wiegman's report was directly relevant to the issue of Conn's ability to walk and/or stand, such as his examination finding of decreased leg strength. (R. 387). Other parts of Dr. Wiegman's report were based on Conn's subjective complaints, such as his observation that Conn appeared to be in significant pain while walking, had to rest after walking about 20 feet, and was unable to walk on his toes and heels separately and unable to walk heel-to-toe. *Id.* Dr. Wiegman's objective findings of Conn's "significantly" decreased range of motion of his back together with Conn's subjective complaints of pain on examination of his neck and back could also contribute to a finding of limitation regarding Conn's ability to walk. Dr. Wiegman noted "back pain" as his first impression at the conclusion of his narrative report, and he stated that Conn's chronic back pain had "significantly affected" his ability to walk. (R. 388).

As Conn notes, Dr. Rodgers included all of these statements in her rather lengthy summary of Dr. Wiegman's report. (R. 408-09, 414). Nevertheless, Dr. Rodgers concluded that Conn was able to perform sedentary work, which requires at least two hours of walking and/or standing per day. (R. 408). In her decision, the ALJ also included a rather detailed summary of Dr. Wiegman's report, as well as a summary of Dr. Rodgers' report. (R. 59-60). Thus, this is not a case where the ALJ ignored probative evidence that arguably supported the claimant's claim of disability.

The Court finds that the ALJ was entitled to give "great weight" to the report of Dr. Rodgers under the circumstances of this case. The Tenth Circuit has commented on a court's role in reviewing an ALJ's discussion of opinion evidence:

> In sum, we reject [claimant's] contention that the ALJ's opinion does not adequately evaluate and discuss the medical-source evidence. Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012). The court also said that "common sense, not technical perfection, is [the] guide" of a reviewing court and that "[t]he more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection." *Id.* at 1166.

As the *Keyes-Zachary* court noted, this Court's task would be easier if the ALJ in her decision on Conn's applications had made her explanation more clear; however, the Court finds that the ALJ's reasoning is clear enough to affirm. After her sentence that she gave the assessment of Dr. Rodgers great weight, the ALJ said that it was supported by the evidence of record, with no significant contradictions. (R. 62). The ALJ then listed specific medical evidence, beginning with the MRI results showing degenerative disc disease and degenerative joint disease. *Id.* She said that Conn was limited to only two hours standing and/or walking due to his neuropathy and obesity. *Id.* She said that the echocardiogram had showed normal heart function and that Conn had been encouraged by his physicians to exercise daily. *Id.* The ALJ said that Conn's testimony that he was trying to exercise as instructed by his physicians indicated that Conn should be able to be on his feet up to two hours a day. *Id.* These specific reasons, with citations to the objective medical evidence, together with the ALJ's comprehensive discussion of

20

the reports of both Dr. Wiegman and Dr. Rodgers, are sufficient to explain why she found that Conn was capable of performing sedentary work.

Additionally, regarding Conn's subjective complaints of disabling pain, the Court finds that the ALJ's credibility assessment is sufficient, as discussed below. Therefore, those parts of Conn's argument regarding the reports of Dr. Wiegman and Dr. Rodgers that relate to observations of pain are not persuasive, because the ALJ adequately explained her reasons for finding Conn's subjective complaints to be not wholly credible. The Court affirms the portion of the ALJ's decision related to Dr. Rodgers' assessment and finds that those portions of Dr. Wiegman's report cited by Conn do not undermine the RFC limiting Conn to sedentary work to an extent to require reversal. Instead, the ALJ's decision reflects that she considered all of the evidence, including the evidence cited by Conn, and had legitimate reasons for coming to her conclusion that Conn could perform sedentary work.

Next, Conn says that the ALJ erred by failing "to identify what weight Dr. Wiegman's CE opinion should have received." *Id.*, p. 6. Conn does not describe what "opinion" of Dr. Wiegman is the focus of his complaint, but the undersigned assumes that Conn is referring to the items he listed earlier in his argument:  significant pain upon walking; inability to walk more than 20 feet without stopping to rest; inability to walk on heels and toes separately; inability to walk heel-to-toe; and significantly reduced range of motion. *Id.* To the extent that Conn intended to argue that the ALJ erred in identifying the weight she gave any other findings of Dr. Wiegman, Conn has waived any intended argument because no other findings were identified in Conn's Opening Brief. *See Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("[C]laimant does not identify which treating physician she feels was ignored, and we will not speculate on her behalf."); *Eacret v. Barnhart*, 120 Fed. Appx. 264, 265-66 (10th Cir. 2005)

(unpublished) (it is a "dangerous practice" for a claimant to leave the court to "comb through the briefs and the record" to ascertain what claimant's arguments are). *Gilbert v. Astrue*, 231 Fed. Appx. 778, 782 (10th Cir. 2007) (unpublished) (when claimant did not cite to the medical records in support of her argument regarding treating physician opinion evidence, court would not "sift through" the record to find support for her arguments).

Regarding the portions of Dr. Wiegman's consultative report that Conn did specifically identify in his Opening Brief, Conn's argument requires a discussion of whether these recited items were opinions. The Tenth Circuit in *Cowan v. Astrue,* 552 F.3d 1182, 1188-89 (10th Cir. 2008) explained that a "true medical opinion" was one that contained a doctor's "judgment about the nature and severity of [the claimant's] physical limitations, or any information about what activities [the claimant] could still perform." Thus, the *Cowan* court found that a statement by a treating physician that the claimant had a stroke "and I feel he may never return to work" was not a true medical opinion. *Id. See also Sullivan*, 519 Fed. Appx. at 988; *Martinez v. Astrue,* 316 Fed. Appx. 819, 822-23 (10th Cir. 2009) (unpublished) (ALJ did not need to provide specific legitimate reasons for rejecting portion of treating physician's letter that contained only generalized statements); *Mann v. Astrue*, 284 Fed. Appx. 567, 570 (10th Cir. 2008) (unpublished) (treating physician recommendation that the claimant see an orthopedic specialist was not a treating physician opinion because it did not address functional limitations).

It seems clear that the ALJ did not accept the recited items as opinion evidence. The ALJ said that Conn presented to the consultative examination with Dr. Wiegman "stating he cannot walk for more than 20 feet, before he has to rest." (R. 59). The ALJ's next sentence continued: "However, Dr. Wiegman noted during the examination, [Conn] did not appear to be in any distress." *Id.* It therefore appears that the ALJ did not accept a limitation to walking 20 feet as a

true medical opinion of Dr. Wiegman, but rather as a subjective complaint of Conn that was not fully supported by the medical observations of Dr. Wiegman. The ALJ noted that Dr. Wiegman observed that Conn appeared to be in significant pain upon walking. This would also be an observation regarding a subjective complaint, and not a true medical opinion. Conn's difficulty with heel and toe walking, together with his significantly reduced range of motion of his back were observations, but not true medical opinions that expressed how those difficulties affected his functional capacity. Because none of the recited observations are true medical opinions as the Tenth Circuit described in *Cowan*, Conn's complaint that the ALJ failed to explain what weight she gave opinions of Dr. Wiegman is not persuasive.

The next part of Conn's argument is again flawed by lack of development, causing this part to be waived. Plaintiff's Opening Brief, Dkt. #13, pp. 6-8. Conn refers to "findings of the treating physicians: Dr. Disalvatore, Dr. Hardage, Dr. Williams and [doctors from the OSU Clinic]." *Id.*, pp. 6-7. Conn gives no citation to any of the medical records either by reference to the administrative transcript, or by date. Conn then provides a legal discussion of the general preference for treating physician opinion evidence over opinions from examining or nonexamining consultants. *Id.*, p. 7. Conn states that the ALJ erred in rejecting the "opinions referenced above," but there is no reference above, other than the recited items from Dr. Wiegman's report previously discussed. *Id.* Conn states that the opinions were "uncontradicted," but again, he gives no citation to any particular medical document or page number of the administrative transcript that would allow this Court to look up these purported uncontradicted opinions in order to give meaningful review. *Id.*, p. 8. Finally, Conn repeats the complaint that the RFC determination that Conn could walk and/or stand up to two hours was

inconsistent with Conn's inability to walk 20 feet without resting, which this Court has rejected for the reasons set forth above.  *Id.*

Without some designation by Conn of the treating physician opinion evidence that he asserts should have been given deference by the ALJ, this Court has no ability to analyze and rule on the issue Conn attempts to raise.  The inadequacy of Conn's development of this issue is similar to that of the claimant in *Threet*, 353 F.3d 1185, 1190.  The *Threet* court explained that it was unable to address the claimant's first issue that the ALJ erred in failing to articulate reasons for disregarding the opinions of treating physicians because the argument was not sufficiently developed.  *Id.*  "[C]laimant does not identify which treating physician she feels was ignored, and we will not speculate on her behalf."  *Id.*  The Tenth Circuit left the first issue at that and went on to the claimant's other arguments.  *Id.  See also Eacret*, 120 Fed. Appx. at 265-66 (court is "not required to speculate on what a party is arguing or to craft her arguments for her"); *Gilbert*, 231 Fed. Appx. at 782.  *Threet, Eacret, and Gilbert* illustrate that this Court has no ability to analyze and rule on any issues regarding possible treating physician opinion evidence, and this Court will not speculate on what Conn's arguments are.  Conn has waived any issue regarding potential treating physician opinion evidence due to his failure to develop his argument in a fashion that allows for meaningful review.

## No RFC Error Related to Use of Walker

Under a heading stating a second argument as the "RFC error," Conn says that the ALJ noted that Conn needed a walker, but did not include any provision for use of a walker in the RFC determination.  Plaintiff's Opening Brief, Dkt. #13, p. 8.  This argument is easily disposed of, because the ALJ did not note that Conn needed a walker, but she did summarize Conn's testimony that he used a walker for support.  (R. 57).  The ALJ also found, as discussed below,

that Conn's testimony was not fully credible. The ALJ was not required to include limitations that she found were not supported by the evidence, and therefore her omission of a requirement for a walker in the RFC determination was not erroneous. *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009) (RFC is based on entire record including the credibility of the claimant's subjective complaints).

**Credibility Assessment**

Credibility determinations by the trier of fact are given great deference. *Hamilton v. Secretary of Health & Human Services,* 961 F.2d 1495, 1499 (10th Cir. 1992).

> The ALJ enjoys an institutional advantage in making [credibility determinations]. Not only does an ALJ see far more social security cases than do appellate judges, [the ALJ] is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion.

*White v. Barnhart,* 287 F.3d 903, 910 (10th Cir. 2002). In evaluating credibility, an ALJ must give specific reasons that are closely linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); Social Security Ruling 96-7p, 1996 WL 374186. "[C]ommon sense, not technical perfection, is [the] guide" of a reviewing court. *Keyes-Zachary*, 695 F.3d at 1167.

The Court is convinced that the ALJ's credibility findings here are "closely enough linked to the evidence to pass muster." *Keyes-Zachary*, 695 F.3d at 1172. The way the ALJ structured her decision introduces some difficulty to the review her credibility finding, because she appears to have commented on the credibility of the evidence as she was summarizing it. (R. 56-61). After her summary of the medical evidence, the ALJ said that she was persuaded that Conn exaggerated "at least some of his symptoms, including disabling pain." (R. 61). She said that Conn was not entirely credible in light of "the degree of medical treatment required,"

discrepancies between Conn's assertions and the medical evidence, and medical findings on examination. *Id.* She said that findings and clinical data did not closely corroborate or correlate with Conn's subjective complaints. *Id.*

The ALJ did not then give specific examples to support these legitimate reasons that could undermine a claimant's subjective complaints, but the undersigned finds that the ALJ had instead given those examples as comments in her summary of the medical evidence. (R. 56-61). For example, the ALJ summarized Conn's visit to Dr. Hardage on January 3, 2008 after the December 14, 2007 motor vehicle accident. (R. 57-58). She first summarized Conn's subjective complaints. *Id.* She then said that, on examination, Dr. Hardage found tenderness to palpation along the trapezius and midline of the neck from approximately C4 to C7. (R. 58). At that point, the ALJ introduced observations of Dr. Hardage that tended to show a lack of severity of Conn's injuries, including that he had good range of motion of his neck and he reported only mild pain at full flexion. *Id.* Conn had no pain with extension, negative axial load compression and negative Spurling's. *Id.* Strength, sensation and reflexes were noted to be intact throughout Conn's upper arms. *Id.* The ALJ then made a similar summary of Dr. Hardage's findings regarding Conn's lumbar spine: there was good range of motion, but pain with extension and full flexion; tenderness to palpation "throughout the lumbar region"; negative straight leg raise; and strength, sensation, and reflexes were intact throughout Conn's legs. *Id.*

There are numerous other examples of this structure of commenting on credibility throughout the summary of the medical evidence. The ALJ noted that Conn told Dr. Hardage on March 21, 2008 that a steroid injection had helped significantly and that he had very little pain in his neck with no radicular symptoms. *Id.* On April 25, 2008, Conn was much better, had good

range of motion of the cervical spine, and had no tenderness on palpation.  *Id.*  Conn had mild pain with extension of his lumbar spine and no pain on flexion.  (R. 59).

After a gap in the medical records from 2009 to 2011, the ALJ noted that Conn saw Dr. Williams at FSHC on March 21, 2012, with complaints that included dizziness and headaches, but he was not checking his blood sugar levels regularly.  (R. 60).  The ALJ noted that at the OSU Clinic on July 23, 2012, Conn said that he was feeling much better and had been walking more.  (R. 61).  She noted that Conn was advised to exercise.  *Id.*  The ALJ noted that Conn made complaints to the OMM Clinic in 2012 that he had a burning sensation of the plantar side of his feet, but that no similar notation was made about his hands.  *Id.*  Physical examinations showed negative straight leg raising and normal reflexes.  *Id.*

All of these examples support the reasons that the ALJ gave for finding that at least some of Conn's claims were exaggerated, because they are examples of discrepancies between Conn's assertions of subjective complaints and the objective medical evidence.  A finding that subjective complaints are inconsistent with objective medical evidence is a legitimate reason that supports an adverse credibility assessment.  *Newbold v. Colvin*, 718 F.3d 1257, 1267 (10th Cir. 2013).  While it would have made the Court's task easier if the ALJ had linked the evidence to credibility in a more direct way, the ALJ made her reasoning clear.  *Keyes-Zachary*, 695 F.3d at 1166 ( "[t]he more comprehensive the ALJ's explanation [for weight given opinion evidence], the easier our task"); *Moua v. Colvin*, 541 Fed. Appx. 794, 798 (10th Cir. 2013) (unpublished) (no principle of administrative law or common sense requires that a case be remanded in quest for a perfect opinion, unless there is reason to believe that the remand might lead to a different result).

After this first paragraph addressing Conn's credibility, the ALJ continued with a second paragraph in which she noted that Conn had been less than compliant in monitoring his blood sugar levels. (R. 62). A claimant's lack of compliance with treatment is a legitimate factor in finding that the claimant's claim of disability is not credible. *See* SSR 96-7p, 1996 WL 374186 *7 (observing that a claimant's credibility may be undermined "if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure"). Conn's lack of compliance with the prescribed treatment for his diabetes was a legitimate factor undermining his credibility that the ALJ closely linked to substantial evidence.

Much of the remainder of the ALJ's credibility assessment consisted of boilerplate provisions. (R. 62). The undersigned disapproves of the extent to which the ALJ used boilerplate language in her credibility assessment. The use of boilerplate language in Social Security disability cases has been discouraged by the Tenth Circuit because it fails to inform the reviewing court "in a meaningful, reviewable way of the specific evidence the ALJ considered." *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004). However, boilerplate language is "problematic only when it appears 'in the absence of a more thorough analysis.'" *Keyes–Zachary,* 695 F.3d at 1170 (quoting *Hardman*). Here, the Court finds that in the first two paragraphs of her credibility discussion, as the Court has described above, the ALJ gave sufficient, legitimate reasons for finding Conn less than fully credible and those reasons were closely linked to substantial evidence. Thus, the ALJ did give the more thorough analysis that is required of an ALJ when assessing a claimant's credibility, and her use of boilerplate provisions is not a fatal flaw.

In Conn's Opening Brief, he argues that the ALJ's first reason for finding him not fully credible was "unsupported by details from the record." Plaintiff's Opening Brief, Dkt. #13, p. 9. As described above, the Court finds that the ALJ did give those supporting details from the record when she summarized the medical evidence, although it would have been preferable if she had more directly linked the examples to her first reason.

Conn also argues that his noncompliance with glucose monitoring happened "on a few occasions due to financial problems." *Id.* Conn gave no citations to the record to support this statement. *Id.* As discussed above, when a claimant has not cited to the medical records, this Court will not "sift through" the record to find support for his arguments. *Gilbert*, 231 Fed. Appx. at 782. This argument is accordingly waived. *Id.* Even absent a finding of waiver, however, Conn's argument is not persuasive because he did not testify that his noncompliance was due to financial factors, and his attorney at the hearing did not ask him any questions about financial inability to afford treatment. (R. 85-100). *Hawkins*, 113 F.3d at 1166-67 (ALJ can ordinarily rely on counsel to structure and present the claimant's case). Moreover, the ALJ affirmatively discussed and cited to the medical evidence that Dr. Williams, at FSHC, had noted that Conn had "very limited money" and needed additional treatment, and Dr. Williams therefore gave Conn information about the OSU Clinic. (R. 60, 434, 440). Conn eventually did follow up with the OSU Clinic. (R. 444-68). This evidence and the combined evidence showing that Conn presented to several different treating facilities once he began seeking treatment for his diabetes in 2011 undermines any claim that his noncompliance should not have been used as a factor in the ALJ's credibility assessment because it was due to his financial circumstances. (R. 416-75).

Conn's final argument addressing the ALJ's credibility assessment was that the ALJ erred in stating that there were no opinions from treating or examining physicians that Conn was

disabled or had limitations greater than those found by the ALJ. Plaintiff's Opening Brief, Dkt. #13, pp. 9-10. Conn says that this statement by the ALJ was preposterous because it was written after she had summarized "Dr. Wiegman's findings." *Id.* Again, Conn does not specify any of Dr. Wiegman's findings as showing that Conn was disabled or had limitations greater than thoe found by the ALJ. *Id.* The undersigned assumes that Conn is therefore referring back to the items he listed in his argument relating to opinion evidence: significant pain upon walking; inability to walk more than 20 feet without stopping to rest; inability to walk on heels and toes separately; inability to walk heel-to-toe; and significantly reduced range of motion. *Id.*, p. 6. As the undersigned explained in the portion of this decision related to Conn's arguments addressing Dr. Wiegman's report, the undersigned finds that none of the items identified by Conn from that report were true medical opinions. *Cowan*, 552 F.3d at 1188-89. Thus, there was no error in the ALJ's statement that there were no opinions from other physicians that Conn was disabled or had greater limitations.

Moreover, even if the undersigned discounted this factor, and even with discounting the boilerplate provisions included by the ALJ, the ALJ's credibility assessment remains supported by legitimate reasons closely linked to substantial evidence. The question the Court must decide is whether the decision of the ALJ is supported by substantial evidence.

> The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.

*Cowan*, 552 F.3d at 1185 (further quotation omitted). Here, even if the evidence was susceptible to a conclusion in favor of finding Conn to be disabled, that possibility would not mean that the ALJ's conclusion of nondisability is lacking support by substantial evidence.

The ALJ's credibility assessment was properly supported by legitimate reasons that were linked to substantial evidence in a fashion that satisfied legal requirements. The Court therefore finds that the ALJ's credibility assessment was sufficient, and the ALJ's decision is hereby **AFFIRMED.**

## Conclusion

The decision of the Commissioner is supported by substantial evidence and complies with legal requirements. The decision is **AFFIRMED**.

Dated this 30th day of July 2015.

Paul J. Cleary
United States Magistrate Judge